USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/26/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

ADRIAN ANDERSON,

Plaintiff,

- against -

CITY OF NEW YORK DEPARTMENT OF CORRECTIONS,

Defendant.

---------------------------------------------------- X

**OPINION AND ORDER**

**11 Civ. 4069 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION

Adrian Anderson, presently incarcerated and proceeding *pro se*, brings this action pursuant to section 1983 of Title 42 of the United States Code ("section 1983") alleging that his constitutional rights were violated because he was not issued appropriate footwear when he was incarcerated in the Rikers Island facilities ("Rikers") of defendant New York City Department of Correction ("DOC") in 2010. Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rule of Civil Procedure on the following grounds: (1) failure to adequately assert deliberate indifference to a serious medical need; and (2) DOC is not a suable entity; and, alternatively, Anderson fails to establish a *Monell* claim against the City of New York. For the following reasons, defendant's motion for

summary judgment is granted.

## II. BACKGROUND[1]

### A. Undisputed Claims

#### 1. Anderson's Orthopedic Condition

On December 12, 2009, Anderson broke his ankle while in a drug rehabilitation facility to which he was paroled.[2] He was taken to North General Hospital where a metal rod was inserted into his ankle.[3] The rod required no maintenance or treatment after the initial surgery.[4] Although Anderson was not prescribed orthopedic footwear, he was advised by his doctor to wear shoes that were more like boots than sneakers to provide ankle support.[5] These were

---

1 The following facts are derived from the Complaint and from the parties' Rule 56.1 statements and supporting documents. The facts are undisputed unless otherwise noted; where disputed, they are construed in the light most favorable to the plaintiff. *See, e.g., Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

2 *See* Defendant's Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 1.

3 *See* 8/28/12 Transcript of Adrian Anderson Deposition ("Tr.") at 30, Ex. 1 to the Memorandum of Law in Support of Defendant's Motion for Summary Judgment ("Def. Mem.").

4 *See id.* at 35.

5 *See* Def. 56.1 ¶ 5. *See also* Tr. at 11, 13.

described as "3/4 length boots" to support his ankle.[6] Subsequently, Anderson purchased several pairs of his own footwear – supportive boots from a sporting goods store – but not orthopedic shoes.[7]

**2. Treatment at Rikers Island**

Upon entering Rikers in September 2010, Anderson's personal footwear were confiscated and he was issued standard prison "patakis," which Anderson describes as a flat sneaker with no cushion.[8] Anderson requested supportive footwear and was sent to a speciality orthopedic clinic on October 18, 2010.[9] His foot was x-rayed and he was given a prescription for work boots. Anderson was then issued three-quarter length work boots.[10] These boots, unlike his confiscated personal boots, did not have supportive insulation.[11] They did, however, support the ankle. In February or March 2011, Anderson was given permission to wear his personal footwear at Rikers, which were then sent to him by

---

6 *See* Def. 56.1 ¶ 5. *See also* Tr. at 13..

7 Anderson purchased several pairs of the Nike ACG boot. *See* Tr. at 12. *See also* Def. 56.1 ¶ 6.

8 *See* Def. 56.1 ¶¶ 8-9. *See also* Tr. at 14, 15.

9 *See* Prison Health Services Record, Ex. B to Def. Mem. *See also* Def. 56.1 ¶ 11.

10 *See id.*

11 *See* Def. 56.1 ¶ 13.

his wife.[12]

### B. Disputed Claims

Anderson alleges that because DOC did not issue him supportive footwear nor let him keep his own, he "sustained a number of injuries including sprained ankles, damaged nerves and bleeding calluses on the bottom of my feet."[13] Although Anderson complained that he experienced "some discomfort," and "some extreme discomfort" from his ankle injuries, he did not go to the Rikers Island medical clinic to be examined.[14] Further, Anderson testified that he did not go to the clinic for nerve damage, which he described as a tingling sensation in his foot which occasionally went numb.[15] After he was issued work boots by DOC, Anderson did not return to the medical clinic for any problems with his feet.[16]

## III. LEGAL STANDARDS

### A. Summary Judgment

"Summary judgment is designed to pierce the pleadings to flush out

---

12 *See* Tr. at 24, 27.

13 Compl. at 2; *Accord* Tr. at 30.

14 *See* Tr. at 37-39.

15 *See id.* at 40.

16 *See id.* at 37-41.

those cases that are predestined to result in a directed verdict."[17] Thus, summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[18] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[19]

"[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[20] "When the burden of proof at trial would fall on the non-moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[21] In turn, to defeat a motion for summary judgment, the non-moving party

---

[17] *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997).

[18] *Rivera v. Rochester Genesee Regional Transp. Authority*, 702 F.3d 685, 692 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)) (other quotations omitted).

[19] *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012) (internal quotations and alterations omitted).

[20] *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation omitted).

[21] *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

must raise a genuine issue of material fact.[22] The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[23] and cannot "rely on conclusory allegations or unsubstantiated speculation."[24]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[25] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[26]

Where the plaintiff is proceeding *pro se*, his pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers,"[27] and his pleadings must be "interpret[ed] ... to raise the

---

[22] *Id.*

[23] *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[24] *Id.*

[25] *Cuff ex rel. B.C. v. Valley Cent. School Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[26] *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[27] *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) ("Because [plaintiff] is a *pro se*

strongest arguments they suggest."[28] However, a *pro se* plaintiff must still meet the usual requirements of summary judgment .[29] Thus, a *pro se* plaintiff's "failure to allege either specific facts or particular laws that have been violated renders [his] attempt to oppose defendants' motion [for summary judgment] ineffectual."[30]

**B. Section 1983**

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit; it simply provides a

---

litigant, we read his supporting papers liberally.").

[28] *Burgos*, 14 F.3d at 790.

[29] *See Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4470, 2004 WL 2008848, at *4 (S.D.N.Y. Sept. 8, 2004) ("'Proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment.'") (quoting *Cole v. Artuz*, No. 93 Civ. 5981, 1999 WL 983876, at *3 (S.D.N.Y. Oct. 28, 1999)).

[30] *Kadosh v. TRW*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

mechanism for enforcing a right or benefit established elsewhere."[31] "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[32] In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[33] Any form of liability under section 1983 requires that the defendant's direct involvement caused the damages. "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[34]

As the Supreme Court established in *Monell v. New York City*

---

[31] *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

[32] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[33] *See Palmieri v. Lynch*, 932 F.3d 73, 78 (2d Cir. 2004).

[34] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (citations omitted).

*Department of Social Services*,[35] in order to have recourse against a municipality or other local government under section 1983, a plaintiff "must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury."[36] In general, "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[37] A municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[38] Moreover, a policy, custom, or practice cannot arise soley from a single instance of unconstitutional conduct by an employee of the municipality.[39]

---

35 436 U.S. 658 (1978). Interpreting the language of section 1983 and the legislative history surrounding its passage in the Civil Rights Act of 1871, the Court in *Monell* held that local governing bodies could be held liable either on the basis of formally approved policy or on the basis of "'customs'" or "'usages.'" *Id.* at 690–91 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Later cases have "considerably broadened the concept of official municipal action." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004).

36 *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 131 S.Ct. 1350, 1359 (2011), in turn quoting *Monell*, 436 U.S. at 691).

37 *Connick*, 131 S.Ct. at 1359 (citing *Monell*, 436 U.S. at 694; *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986); *Adickes*, 398 U.S. at 167–68).

38 *See Cash*, 654 F. 3d at 333.

39 *See Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y 2012). *See also Tuttle*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment) ("[T]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable

In the absence of an established written municipal policy, a plaintiff must prove that a municipal practice was so "'persistent or widespread' as to constitute 'a custom or usage with the force of law,'"[40] or that a practice or custom of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials."[41]

**C. Eighth Amendment Right to be Free from Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.[42] The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."[43] Prison

---

on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

40 *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)).

41 *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

42 *See* U.S. Const. amend. VIII.

43 *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). *Accord Farmer v. Brennan*, 511 U.S. 825, 834 (1994) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . " (quotation marks and citations omitted)).

officials have a "duty . . . to ensure that inmates receive adequate medical care."[44] But "the prison official's duty is only to provide reasonable care . . . '[P]rison officials who act reasonably [in response to an inmate health risk] cannot be found liable under the Cruel and Unusual Punishment Clause[.]'"[45] To have a viable claim, a plaintiff must provide evidence of sufficiently harmful acts or omissions with the intent to either deny or unreasonably delay access to needed medical care, or the wanton infliction of unnecessary pain by prison personnel.[46]

The Cruel and Unusual Punishment Clause embodies both an objective and a subjective prong.[47] "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."[48] "Because the Eighth Amendment is not a vehicle for medical malpractice claims, nor a substitute for state tort law, not every

---

44 *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer*, 511 U.S. 825, 832, 844 (1994)).

45 *Id.* at 279-80 (quoting *Farmer*, 511 U.S. at 845) (alteration in original).

46 *See Estelle*, 429 U.S. at 104-106.

47 *See Salahuddin*, 467 F.3d at 279-81.

48 *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (quoting *Estelle*, 429 U.S. at 104)).

lapse in prison medical care will rise to the level of a constitutional violation."[49] The deliberate indifference standard is therefore high, and generally will not be met by mere complaints of negligence or allegations of medical malpractice.[50]

## VI. DISCUSSION

### A. Deliberate Indifference to Anderson's Medical Need

Anderson argues that he has met the standard to show that he suffered a serious medical need because the non-supportive footwear issued to him by DOC caused further discomfort to his ankle injury, including bleeding callouses, sprained ankles and nerve damage. Anderson claims that defendant was aware of his pre-existing foot condition and that his condition was exacerbated when his personal supportive footwear were confiscated upon arrival by intake correction officers. Further, Anderson claims that instead of prescribing work boots for him, defendant should have been seen by a specialist to determine what type, if any, special footwear he should be allowed to wear.

#### 1. Objectively Serious Harm

---

49 *Id.* (citing *Estelle*, 429 U.S. at 105-06).

50 *See Estelle*, 429 U.S. at 106. *See also Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind, equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" (citations omitted)).

Under the Eighth Amendment, states may not deprive prisoners of such "basic human needs" and prison officials may not expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health."[51] "Ultimately, to establish the objective elements of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency."[52] Only "extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim."[53] Claims of deliberate indifference to conditions similar to those raised by plaintiff have been found to be insufficiently serious to satisfy the objective prong of the deliberate indifference standard.[54] Here, Anderson merely alleges that he was forced to wear DOC issued

---

[51] *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). *Accord Farmer*, 511 U.S. at 837 (a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities" or pose an "excessive risk to inmate health or safety" to constitute an Eighth Amendment violation).

[52] *Phelps*, 308 F.3d at 185.

[53] *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999).

[54] *See, e.g.*, *Edwards v. Quinones*, No. 10 Civ. 3141, 2010 WL 2010 WL 4669110, at *3 (S.D.N.Y. Nov. 17, 2010) (dismissing plaintiff's claim that he was provided with inadequate sneakers and noting that the allegations "border[ed] on the patently frivolous"); *Hallett v. City of New York*, No. 08 Civ. 2831, 2010 WL 1379733, at *6 (S.D.N.Y. Mar. 26, 2010) (dismissing plaintiff's claim that he was issued shoes that were too small); *Brown v. DeFrank*, No. 06 Civ. 2235, 2006 WL 2006 WL 3313821, at *21 (S.D.N.Y. Nov. 15, 2006) (finding pain from foot condition not sufficiently serious and collecting cases); *Alston v. Howard*, 925 F.

work boots instead of his own Nike boots. The Constitution simply does not mandate comfortable prisons.[55] Although Anderson may have been in discomfort for a period of time from wearing shoes that he claims provided no support for the foot or ankle, this does not constitute a condition of confinement that offends contemporary standards of decency or poses an excessive risk to a prisoner's health or safety.[56] Nor did Anderson go to the medical clinic after receiving the DOC issued work boots to complain of his alleged injuries caused by the DOC shoes. Further, the physician's note only stated that Anderson should be given work boots to support his ankle, which he then received from the housing unit. Accordingly, Anderson has failed to establish the first requirement of a deliberate indifference claim.

**2. Deliberate Indifference**

In addition to Anderson's failure to allege a sufficiently serious condition, he cannot establish the subjective prong of his deliberative indifference claim: that defendant acted with a sufficiently culpable mind in causing the alleged

---

Supp. 1034, 1040 (S.D.N.Y. 1996) (ankle condition and resulting foot pain requiring the use of special footwear not sufficiently serious to establish a constitutional violation).

55 *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

56 *See Hallett*, 2010 WL 1379733, at *6.

harm.[57] Anderson does not claim that any individual prison official acted with such deliberate indifference as to amount to a constitutional violation; in fact, Anderson does not name any individual defendants in the Complaint. Rather, he appears to be alleging that DOC, as an entity, was deliberately indifferent to his allegedly unconstitutional conditions of confinement. In order to prove deliberate indifference of a municipality in the context of failure to provide adequate supervision to its employees, a plaintiff must show "that the need for more or better supervision to protect against constitutional violations was obvious."[58] Here, Anderson alleges that DOC failed to provide adequately supportive footwear. In order to establish DOC's deliberate indifference, Anderson must show that the "need" for more supportive footwear was similarly "obvious."[59] However, given the lack of severity of the harm, Anderson cannot establish that it was obvious that DOC-issued footwear would result in a constitutional violation. Furthermore, DOC allowed Anderson to wear his own footwear after complaining of his ankle pain. Anderson only went to the clinic once to complain of these ailments before he was issued work boots. Between the time he was issued work boots and being

---

57 *See Farmer*, 511 U.S. at 837.

58 *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).

59 *Id.*

granted permission to wear his personal supportive boots, he did not go back to the clinic for related foot pain. Accordingly, Anderson cannot establish deliberate indifference on the part of DOC. As Anderson has failed to state a cognizable section 1983 claim, summary judgment is appropriate.

**B. DOC Is Not a Suable Entity**

Pursuant to section 396 of the New York City Charter, all legal actions complaining about an agency of the City of New York must be brought against the City of New York, and not against a City agency because City agencies are not suable entities.[60] Section 396 of the New York City Charter indicates that the DOC is a non-suable entity. "All actions and proceedings for the recovery of penalties . . . shall be brought in the name of the City of New York and not that of any agency, except where otherwise provided by law."[61] Thus, the City of New York is the proper defendant and the claims against DOC are dismissed.[62] Anderson has offered no evidence of any improper policy, practice or custom that the City engages in with respect to the hiring, training, supervision or direction of

---

60 *See* New York City Charter, Ch. 17, § 396.

61 *Id.*

62 *See Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 499 (S.D.N.Y. 2010); *Neishlos v. City of New York*, No. 00 Civ. 914, 2003 WL 22480043, at *1 (S.D.N.Y. Nov. 3, 2003).

its employees that caused or contributed to his alleged injuries.[63] Accordingly, Anderson's claims against the City are dismissed on this alternative ground.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted. The Clerk of the Court is directed to close this motion [Docket No. 29] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 25, 2013

[63] *See Monell*, 436 U.S. at 692–94.

**-Appearances-**

**Plaintiff (Pro Se):**

Adrian Anderson
Din#11-A-2890
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, NY 12051

**For Defendant:**

Janice C. Silverberg
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-8119